UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANET S. SALAS,

        Plaintiff,

v.                                       CASE No. 8:07-CV-1067-T-17TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision be affirmed.

I.

The plaintiff, who was forty years old at the time of the administrative hearing and who has the equivalent of a high school education

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

(Tr. 67, 83), has worked primarily as a produce packer (Tr. 95). The plaintiff has filed a claim for supplemental security income payments, alleging that she became disabled due to a back problem and obesity (Tr. 77). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a *de novo* hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of morbid obesity and dysthymia (depression) (Tr. 37). She concluded that these impairments produced the following residual functional capacity: The plaintiff can lift, carry, push or pull up to twenty pounds occasionally and ten pounds frequently; can walk or stand no more than two hours per eight-hour workday and sit up to six hours per day with the limitation that she must stretch every two to three hours; can occasionally balance, stoop, kneel, crouch, crawl, twist, and climb stairs, ropes, ladders, and scaffolds; and cannot perform detailed or complex tasks due to moderate impairment in concentration (Tr. 41). The law judge determined that these limitations prevented the plaintiff from performing past work (Tr. 39). However, based upon the testimony of a vocational expert, the law judge found that there were jobs in the national economy that the plaintiff could perform, such as a wrapper or packager, small parts assembler, or machine

tender (Tr. 40). The law judge, therefore, decided that the plaintiff was not disabled (id.). The Appeals Council in May 2003 let the decision of the law judge stand as the final decision of the Commissioner. However, following correspondence from plaintiff's counsel, the Appeals Council on May 16, 2007, afforded the plaintiff thirty days from that date to file this lawsuit (Tr. 4).

## II.

A. In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(e). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy. In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in

tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

The plaintiff, having no good argument, raises six poor ones. None has merit.

Taking the contentions in the order raised by the plaintiff, she contends first that the law judge failed to consider the combined effect of all of the plaintiff's impairments and her subjective symptoms in determining severity. The law judge obviously considered the plaintiff's obesity and depression since she found those to be severe impairments.

Moreover, the law judge expressly recognized that, "if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis" (Tr. 34). Consequently, the law judge considered the plaintiff's complaints of right shoulder pain, knee pain, headaches, hand numbness, and asthma (Tr. 37). She concluded that these complaints "either have not been confirmed medically and/or the medical evidence of record does not indicate that they have more than a slight effect on the claimant's ability to perform work-related activities" (id.). Furthermore, she provided a reasonable explanation

for this conclusion (Tr. 36-37). Significantly, the plaintiff has made no effort to show that this reasoned conclusion concerning these nonsevere impairments is erroneous.

Similarly, the law judge evaluated the plaintiff's subjective symptoms. She found that the plaintiff's "allegations regarding her limitations are not totally credible" (Tr. 41). In this respect, she explained (Tr. 38):

> The claimant's own allegations are generally credible, as her size could reasonably be expected to cause some discomfort and fatigue. However, there is insufficient diagnostic evidence, as indicated above, to substantiate the degree of pain and discomfort that she has alleged. Her only clear, acceptable physical diagnosis is obesity. The minimal spondylitic spurring noted on the lumbar x-ray of August 20, 1999, is unlikely to cause disabling pain.

Importantly, even though the plaintiff raised six contentions, a challenge to the law judge's credibility determination was not one of them. Under these circumstances, there is no merit to the plaintiff's contention that the law judge erred in failing to consider the combined effects of the plaintiff's impairments and her subjective symptoms.

What is most telling on this issue is that the plaintiff does not identify any functional limitation that the law judge should have found, but did not. Absent such a showing, the plaintiff cannot plausibly argue that the law judge erred in her consideration of the combined effects of the plaintiff's impairments.[2]

The plaintiff argues, second, that the law judge failed to address, or properly evaluate, whether the plaintiff's mental impairment met, or equaled, Listing 12.04, Appendix 1, Subpart P, Part 404, 20 C.F.R. (Doc. 15, p. 6). The listings comprise the third step in the sequential analysis. They set forth conditions that are so severe that, if a listing is met, or equaled, a claimant is considered disabled without regard to vocational considerations. See 20 C.F.R. 416.925.

Listing 12.04 covers affective disorders. In order to satisfy Listing 12.04, the plaintiff must meet, or equal, criteria set out in parts A and

---

[2] It is noted in connection with this argument that the plaintiff, somewhat confusingly, refers to the standard for establishing a severe impairment at the second step of the sequential analysis (Doc. 15, pp. 5-6). This case, however, proceeded beyond the second step and went on to the fifth step. Thus, the criterion for meeting the second step is not particularly material. What is pertinent after the fourth step is reached is not whether the impairments were properly classified as severe or nonsevere, but whether there are functional limitations that the law judge failed to consider. As indicated, that situation is not presented here.

B.[3] The Commissioner concedes that the plaintiff meets part A, but argues (correctly) that the plaintiff does not meet, or equal, part B. In order to satisfy part B, the plaintiff must show two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

The plaintiff has clearly failed to make even a prima facie showing that she meets, or equals, Listing 12.04. "When a claimant contends that [s]he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if, in the alternative, [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency." Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff has not come forward with any such evidence. This failure alone is sufficient to defeat this contention.

---

[3] There is also a part C, which is an alternative to part B. The plaintiff does not mention that part.

In all events, the law judge specifically concluded that the plaintiff did not satisfy the requirements of part B of Listing 12.04. Thus, she found (Tr. 37):

> The claimant's dysthymia or depressive symptoms have been recognized by several examining and treating physicians, but it is clear from their evaluations that her mental impairment does not cause any marked restriction in her activities of daily living, her social functioning or her ability to concentrate or maintain persistence and pace; she has not had and is not expected to experience episodes of deterioration or decompensation.

The plaintiff has not pointed to any evidence in the record that even remotely suggests that the law judge erred with respect to at least two of the criteria. To the contrary, substantial evidence supports the law judge's finding that the plaintiff had only mild limitations in activities of daily living and social functioning, and moderate limitations in concentration (Tr. 38). Consequently, the plaintiff's contention that she meets, or equals, Listing 12.04 is meritless.

Third, the plaintiff contends that the law judge erred in failing to consult with a medical expert (Doc. 15, p. 8). This contention seems to have been prompted by the fact that the law judge, as she was entitled to do, discounted the views of a chiropractor (id.). See 20 C.F.R. 416.913;

Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004). That circumstance certainly does not obligate the law judge to consult with a medical expert.

While a law judge may have a duty to consult with a medical expert if there are gaps in the record, that is not the case here. See Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999). With respect to the plaintiff's physical condition (which seems to be the subject of this contention), the record contains notes and test results from Dr. Herman D. Dorado, the plaintiff's primary care physician (Tr. 134-56). Moreover, the Social Security Administration had already sent the plaintiff to Dr. Jeanne M. McGregor for a consultative examination (Tr. 159-63). Notably, the law judge stated that Dr. McGregor provided "[t]he most significant observation regarding the limitations imposed by the claimant's obesity" (Tr. 38). In addition, the record included the opinions of two nonexamining reviewing physicians (Tr. 175, 183). Under these circumstances, the law judge could reasonably conclude that the medical evidence was sufficient to permit a finding regarding disability.

Further, plaintiff's counsel did not ask the law judge either before (see Tr. 114-16), or at the hearing (Tr. 229-68) to consult with a

medical expert. Consequently, the law judge did not err because she did not employ such an expert.

The plaintiff's fourth contention asserts that the law judge erred in failing to consider the plaintiff's nonexertional impairments and their effect on her ability to work (Doc. 15, p. 9). The thrust of this argument is that the law judge incorrectly relied upon the medical-vocational guidelines (id.). Appendix 2, Subpart P, Part 404, 20 C.F.R. Thus, the plaintiff states, "[i]n cases where non-exertional impairments exist, the ALJ should not apply the Grids conclusively, but should use them only as a framework" (Doc. 15, p. 10). However, the law judge clearly said (Tr. 40):

> The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. Based on the claimant's residual functional capacity, she is capable of performing a significant range of light work as defined in 20 CFR §415.967.

Even more important, the law judge employed a vocational expert to determine whether a person with the plaintiff's residual functional capacity could perform work that exists in the national economy (Tr. 257-64, 266-67). The law judge stated in this respect (Tr. 40):

> The Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined.
>
> . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that ... she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore reached within the framework of Medical-Vocational Rule 202.20.

Obviously, the law judge did not rely upon the grids; rather, she expressly based her finding upon the testimony of the vocational expert. In short, this contention is frivolous.

The plaintiff's fifth contention is that the law judge erred in giving more weight to a nonexamining physician than to an examining physician. The plaintiff's argument, however, does not even support this contention. Thus, she seems to rely upon a statement by Timothy D. Foster, Ph.D., that "Claimant is NOT capable of performing concentrated task oriented activity in a competitive work situation" (Tr. 169). But Dr. Foster is a nonexamining reviewing psychologist. Further, Dr. Foster's opinions are confusing and internally inconsistent, and the law judge did not specifically

-13-

afford the opinion any weight.[4] Accordingly, the plaintiff's reference to Dr. Foster does not support an argument that the law judge improperly gave weight to a nonexamining expert over an examining expert.

In connection with this argument, the plaintiff also refers to Dr. McGregor, who was an examining physician. However, as previously indicated, the law judge not only gave weight to Dr. McGregor's report but stated that Dr. McGregor had provided the "most significant observation regarding the limitations imposed by the claimant's obesity" (Tr. 38).

On this contention, the plaintiff also mentions statements in a report by Dr. Cecilia Yocum, an examining psychologist. The law judge clearly considered Dr. Yocum's report (Tr. 36). Notably, however, Dr. Yocum did not state any opinion regarding mental functional limitations (Tr. 164-66). Consequently, this is not a situation where the law judge ignored, or even discounted, a functional limitation opinion by Dr. Yocum.

---

[4]Dr. Foster, for example, although stating that the plaintiff is not capable of performing concentrated activity, also indicated on the same form that the plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was only moderately limited (Tr. 168). In addition, on a different form prepared on the same day, Dr. Foster said that the plaintiff had no limitations in activities of daily living or social functioning, and had difficulties of concentration, persistence, or pace often, but not frequently (Tr. 198). As previously discussed, the law judge found that the plaintiff had moderate limitations in concentration and accordingly restricted the plaintiff from performing detailed or complex tasks (Tr. 41).

At the conclusion of this argument, the plaintiff deviates from the issue stated in the heading and mentions the standard for considering opinions by treating physicians (Doc. 15, p. 11). However, she does not identify any opinions by treating physicians that the law judge improperly considered or failed to consider. Significantly, the Scheduling Order expressly stated that "discrete challenges must be supported by citations to the record of the pertinent facts" and that any challenges as to which this requirement is not met would be subject to being disregarded (Doc. 13, p. 2). Accordingly, any contention that the law judge erred with respect to the opinion of a treating physician is deemed abandoned due to the failure to cite to any such opinion. In all events, I did not perceive in my review of the record any error by the law judge with respect to the opinion of a treating physician.

Finally, the plaintiff contends that the law judge erred in improperly relying upon the responses of the vocational expert to incomplete hypothetical questions (Doc. 15, p. 11). "[T]o constitute substantial evidence, the [vocational expert's] testimony must be based on a hypothetical posed by an ALJ which encompasses all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). On the other hand, the law judge

judge is not required to include limitations in the hypothetical that the law judge has rejected as unsupported. Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1161.

The vocational expert was asked by the law judge, as well as by plaintiff's counsel, several hypothetical questions covering a variety of factual situations. One of those hypotheticals matched the residual functional capacity found by the law judge (Tr. 259). The expert testified that an individual with such a profile could perform work in the national economy in wrapping and packaging occupations, in small parts assembly, and in machine tending occupations (Tr. 260). Based upon this testimony, the law judge found that the plaintiff was not disabled.

Because the hypothetical question included all of the functional limitations found by the law judge, the expert's answer to that question was valid. Moreover, that answer provides substantial evidence supporting the finding that the plaintiff was not disabled.

The plaintiff points to hypothetical questions that contained more severe limitations than found by the law judge (Doc. 15, pp. 12-13). As to the questions specified by the plaintiff, the expert said that there were no jobs that a person with that profile could perform (Tr. 262-64). However, since the law

judge did not find the restrictions that were included in the hypothetical questions to exist, she could appropriately disregard the expert's answers to those questions.

IV.

The law judge's decision is supported by substantial evidence and does not contain any legal error. Moreover, the plaintiff's challenges to the decision are meritless. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: June 1, 2008

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).